## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CENNY C. NORRIS, | |
| Plaintiff, | |
| v. | Civil Action No. 09-01042 (BAH) |
| KENNETH LEE SALAZAR, *Secretary, U.S. Department of the Interior*, | Judge Beryl A. Howell |
| Defendant. | |

## <u>MEMORANDUM OPINION</u>

The plaintiff, Cenny C. Norris, brings this action against her former employer, the Commission of Fine Arts ("CFA"), alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791 *et seq.* Specifically, the plaintiff alleges that the CFA discriminated against her based on her race and disability (a back injury) by awarding her a bonus of $4000 in 2004 instead of the $5000 she had hoped to receive, as well as by, *inter alia*, placing her on Absence Without Leave ("AWOL") status and denying her request to work from home on a part-time basis. *See generally* Amended Complaint ("Am. Compl."), ECF No. 14.[1]

Pending before the Court is the defendant's Motion to Dismiss the plaintiff's Amended Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 18. For the reasons set forth below, the Court will grant the defendant's Motion to Dismiss.

---

[1] The Amended Complaint is the operative complaint in this action.

## I.   BACKGROUND

### A.   FACTUAL ALLEGATIONS

The plaintiff, Cenny C. Norris,[2] is an African-American woman who was hired in February 2000 as the Administrative Officer of the CFA.  *See* Am. Compl. ¶¶ 4, 6.  The CFA, established in 1910, "is charged with giving expert advice to the President, Congress, and the heads of departments and agencies of the Federal and District of Columbia governments on matters of design and aesthetics, as they affect the Federal interest and preserve the dignity of the nation's capital."  Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem."), ECF No. 18, at 2 n.2 (quoting the Commission of Fine Arts website, available at http://www.cfa.gov).[3]

At the time of the plaintiff's employment, the CFA had a total of eleven salaried employees, including the Secretary and the plaintiff.  *See id.* at 3.  The Secretary of the CFA supervised the plaintiff as well as seven other CFA employees: an "Assistant Secretary, a Technical Information Specialist, an Administrative Assistant, a Staff Architect, an Architectural Historian and two Architects."  Am. Compl. ¶ 8.  In addition to the salaried employees, there are seven unpaid Commissioners (one of whom is Chairman of the Commission) appointed by the President of the United States.  *See id.* ¶ 9; Def.'s Mem. at 3.

The plaintiff was employed as an Administrative Officer at the CFA "at all times relevant to this lawsuit."  Am. Compl. ¶ 4.  Her responsibilities as Administrative Officer "included, but were not limited to, managing the budget by preparing reports, scheduling travel arrangements, organizing training for staff and supervising the work of the administrative assistant."  *Id.* ¶ 7.

---

[2] The plaintiff is referred to by her maiden name, Cenny C. Hester, in prior proceedings before the Merit Systems Protection Board ("MSPB") and the Equal Employment Opportunity Commission ("EEOC").  *See* Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem."), ECF No. 18, Exs. 1-7.

[3] Pursuant to 40 U.S.C. § 9102, the CFA advises on, *inter alia*, "the location of statues, fountains, and monuments in the public squares, streets, and parks in the District of Columbia," "the selection of models for statues, fountains, and monuments erected under the authority of the Federal Government," and "questions of art generally when required to do so by the President or a committee of Congress."  Def.'s Mem. at 2-3 (quoting 40 U.S.C. § 9102).

In 2000, the Secretary of the CFA and the plaintiff's immediate supervisor, Charles Atherton, managed the "day to day operations of the CFA." *Id.* ¶ 8.  The Secretary "made assignments to Ms. Norris, conducted her performance rating, and evaluated her performance." *Id*.

**1.      The Plaintiff's Performance Awards and Promotion at the CFA**

The plaintiff alleges that, on November 2, 2004, she was informed that she would receive an annual bonus of $4,000, instead of the $5,000 she was anticipating.  *See id*. ¶¶ 35-36.  Since two of the plaintiff's three claims arise from the 2004 bonus, the Court provides a brief background about bonuses at the CFA.

For its salaried employees, including the plaintiff, the plaintiff alleges that the "CFA practice is to conduct performance evaluations and award[] bonuses based on the evaluations once a year." *Id.* ¶ 20.  The "practice" is for each staff member to present to the Secretary a self-prepared "memo . . . listing [his or her] accomplishments for the year." *Id*.  The Secretary then "evaluates the employee, [and] meets with the employee to discuss [his or her] performance." *Id.*  The Secretary then recommends to the Chairman of the Commission what amount should be awarded to each employee.  *See id.* ¶ 21.  The plaintiff alleges that, in practice, the Chairman "always signs the recommendations of the Secretary." *Id*.

On September 6, 2000, seven months after the plaintiff's employment with the CFA began, "she received a performance award of $1000." *Id.* ¶ 18.  The next year, the CFA quadrupled her bonus and she received $4,000.  *See id*.  In 2002, she received a $4500 bonus, and, in 2003, she received $4000.  *See id*.

While the plaintiff's bonus in 2003 was slightly less than the year before, she alleges that other CFA employees "received an increase in their performance award over the previous year."

*Id.*[4]  She also alleges that her white male Administrative Support Assistant, Mr. Lukavic, was given a performance award of $4000 in 2003, even after the plaintiff "verbally informed him and her supervisors, Mr. Lindstrom and Mr. Atherton[,] that his performance was unacceptable," and after "[o]ther staff members complained to her that Mr. Lukavic had allowed his work to pile up . . . [and] spent most of his time surfing the internet."  *Id.* ¶ 28.

The plaintiff was "very disturbed" about what she terms the $500 "reduction" in her bonus and "inquired about the reason for the decision to the Secretary[] Mr. Charles Atherton and the Assistant Secretary Mr. Frederick Lindstrom."  *Id.* ¶ 19.  Both were "unable to provide [the plaintiff] with a reason for the decrease in her award."  *Id.* ¶ 23.  The plaintiff informed them that "her performance during the year had been exceptional," *id.* ¶ 31, and that "she believed . . . she was being discriminated against and that she was disturbed and humiliated," *id.* ¶ 24.  When the plaintiff "stressed the unfairness of the decision regarding her performance award, [the Secretary] told her 'life is not fair.'"  *Id.* ¶ 31.  He also, however, promised the plaintiff that "after 6 months he would process paperwork for a promotion on her behalf."  *Id.*

As promised, on July 25, 2004, the plaintiff received a promotion, moving from GS-11 to GS-12, as well as a salary increase of over $18,500 (with her annual salary increasing from $44,148 to $62,659).  *See id.* ¶¶ 6, 26.[5]

---

[4] The plaintiff's Amended Complaint is somewhat contradictory as to the bonuses received by her colleagues: the plaintiff contends that "[i]n November 2003 she received a performance award of $4000 while "[e]very other employee on the staff received an *increase* in their performance award over the previous year."  Am. Compl. ¶ 18 (emphasis added).  Yet, she also states that "in 2003 John Lukavic, the Administrative Support Assistant, received the *same* award that he received the prior year."  *Id.* ¶ 27 (emphasis added).

[5] The plaintiff also states, in an ambiguous manner in the Amended Complaint, that after the Secretary retired, the plaintiff "contacted Human Resources and requested that the promotion be made effective for the date [the Secretary] had promised or on the date [the Secretary] executed the SF-52."  Am. Compl. ¶¶ 33-34.  The plaintiff states, however, that "[t]he promotion was never processed and Human Resources' explanation was that the position of Administrative Officer at Grade Level 12 did not exist when it was signed."  *Id.* ¶ 34.  This allegation is belied, however, by the plaintiff twice stating in the Amended Complaint that she "received a promotion to GS-0341-12/2 to a salary of $62,659.00."  *Id.* ¶¶ 14, 26.

Later that year, following her promotion and pay raise, the Assistant Secretary[6] informed the plaintiff that "all staff were going to receive the same [bonus] awards that they received the prior year." *Id.* ¶ 35.  After the plaintiff reminded him that she had not received an increase the prior year, the Assistant Secretary told her that he had "recommended to the Chairman that she receive an award of $5000," or a $1000 increase from the prior year.  *Id.*  On November 2, 2004, however, the Assistant Secretary informed the plaintiff that the Chairman had not accepted his recommendation and that the plaintiff would receive $4000.  *See id.* ¶ 36.[7]

The plaintiff alleges that one other employee, an Architect, received an award in 2004 that was $1000 more than the Architect received in 2003.  *See id.* ¶ 30.  The plaintiff alleges that the Architect's award "was increased $500.00 by [the Chairman] above the recommendation of [the] Assistant Secretary."  *Id.*

The plaintiff also alleges that the Assistant Secretary told her that the Chairman, who works in New York and only visits CFA once a month for Commission meetings, "was not aware of the actual performance of the CFA staff."  *Id.* ¶ 38.  The Assistant Secretary, however, also "informed her that [the Chairman] had stated that 'Cenny is not performing at the same level as everyone else on staff'" and that the plaintiff was "dropping the ball."  *Id.* ¶ 39.

## 2. The Plaintiff's Back Injury and Subsequent Termination

In June 2003, over a year before her promotion, the plaintiff injured her back "while performing her job duties" at the CFA, and was diagnosed with a herniated disk.  *Id.* ¶¶ 10-11.  The next month she filed a claim with the Office of Workers' Compensation ("OWCP").  *See id.*

---

[6] It appears that sometime between 2004 and 2005, Assistant Secretary Lindstrom served as the Acting Secretary.  The plaintiff refers to Lindstrom as Assistant Secretary and Acting Assistant Secretary interchangeably.  *See, e.g.*, Am. Compl. ¶¶ 23-24.  For clarity, the Court will refer to Lindstrom as Assistant Secretary throughout.

[7] In November 2004, the performance awards of other CFA employees (none of whom occupied the same job position as the plaintiff) were $10,000 (Frederick Lindstrom [Assistant Secretary]), $5,500 (Ms. Kohler), $6,500 (Ms. Alg [Architect]), $6,000 (Mr. Martinez-Canino).  *See* Am. Compl. ¶ 41.

¶ 12.  After filing the claim on July 15, 2003, she was "diagnosed . . . as unable to tolerate a normal workday and [her doctor] recommended that she work a limited work schedule."  *Id.* ¶ 13.  On September 12, 2003, the plaintiff's OWCP claim was approved.  *See id.* ¶ 15.

In October 2004, about three months after her promotion, the plaintiff "re-aggravated" her back injury and "filed a second claim with OWCP."  *Id.* ¶ 16.  That claim was also approved.  *See id.*[8]

"As a result of her condition [the plaintiff] was required to miss some days from work for therapy sessions."  *Id.*  In fact, it appears that the plaintiff was absent from the office on OWCP/LWOP [or Leave Without Pay] from March 2005 until her termination on March 6, 2006.  *See* Def.'s Mem., Ex. 5 (*Hester v. Dep't of the Interior*, No. DC-0752-06-0443-I-1, 2006 MSPB LEXIS 4189, at *2 (M.S.P.B. July 24, 2006)) ("MSPB Denial"), ECF No. 18-5.[9]

On April 5, 2005, while absent from the office, the plaintiff asked the CFA to allow her to work from home since her "physician recommended that she work part-time, obtain a home work station for job simulation and telecommute."  Am. Compl. ¶ 44.  On August 20, 2005, the

---

[8] As noted *supra*, in between the plaintiff's two OWCP claims, on July 25, 2004, she received a promotion and a salary increase.  *See* Am. Compl. ¶ 14.

[9] "While a court may not consider 'matters outside the pleadings' in evaluating a motion to dismiss under Rule 12(b)(6) without converting the motion to one for summary judgment under Rule 56, *see* FED. R. CIV. P. 12(d), documents that are referenced in, or are an integral part of, the complaint are deemed not 'outside the pleadings.'" *Peters v. District of Columbia*, No. 09-cv-02020, 2012 U.S. Dist. LEXIS 52606, at *37-39 n.20 (D.D.C. Apr. 16, 2012) (citing *Mead v. Lindlaw*, 839 F. Supp. 2d 66, 70 (D.D.C. 2012) ("[I]n deciding a Rule 12(b)(6) motion, a court may consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties].") (internal quotation marks and citations omitted); *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)).  In this case, the plaintiff's discrimination claims filed in the MSPB and EEOC proceedings are referenced in the Amended Complaint and therefore may be considered without converting the instant motion into a motion for summary judgment.  *See Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 120 n.2 (D.D.C. 2011) (noting that where "the complaint necessarily relies upon the fact of the charge [of discrimination] and the letter [of determination] in pleading that administrative proceedings were pursued before this action was begun, . . . the motion need not be converted to one for summary judgment."); *Hamilton v. Rhee*, 770 F. Supp. 2d 241, 244 n.2 (D.D.C. 2011) (noting that the EEOC charge "was incorporated by reference in the plaintiff's complaint, and the court properly considers it as part of a motion to dismiss").  Furthermore, records of these proceedings have been attached as exhibits not only to the defendant's Motion to Dismiss, but also to the plaintiff's Opposition.  *See* Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 30, Exs. 1-3.

plaintiff again asked to work from home or to work in the office on a part-time basis, but her requests were denied.  *See id.* ¶¶ 45, 51.

At some point, the Secretary required the plaintiff to "provide leave requests for all her absences even though she had filed disability certificates from the OWCP with the CFA."  *Id.* ¶ 46.  The Secretary also placed the plaintiff on AWOL status because of her attendance record, and the plaintiff was "denied benefits for several pay periods in 2005."  *Id.* ¶ 47.

Ultimately, on March 6, 2006, the plaintiff was dismissed from her job after she had been on leave for 10 months.  *See id.* ¶ 52; MSPB Denial at *2.

## B.    PROCEDURAL HISTORY

The plaintiff has initiated two sets of administrative proceedings related to her claims before this Court.  In the first set of proceedings, initiated before the Equal Employment Opportunity Commission ("EEOC"), the plaintiff alleged that the $1000 discrepancy between what she hoped to receive as a bonus in 2004 and what she actually received was due to discrimination based on race and disability.  *See* Pl.'s Mem. in Opp'n to Def.'s Mot. for Partial Dismissal of the [Initial] Complaint ("Pl.'s Opp'n to Part. Dismissal"), ECF No. 7, at 2; Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 30, at 4.  This EEOC proceeding gives rise to the action currently before the Court.  *See id.* at 5; Def.'s Mem. at 20-21. In the second set of proceedings, initiated before the Merit Systems Protection Board ("MSPB"), the plaintiff challenged her removal from employment.  *See* Pl.'s Opp'n at 5 n.2.  The MSPB proceedings concluded in January 2007 and are not currently at issue.  Def.'s Mem. at 6; Def.'s Mem., Ex. 7 (*Hester v. Childs*, No. 0320070038, 2007 WL 436507 (E.E.O.C. Jan. 31, 2007) ("Appeal of MSPB Final Decision").  The Court will briefly review each set of proceedings.

### 1.      EEOC Proceedings

On February 16, 2005, the plaintiff filed an administrative complaint with the EEOC alleging racial and disability discrimination.  *See* Pl.'s Opp'n at 4; *id.*, Ex. 3 (*Hester v. Norton*, No. 100-2006-00135X, slip op. (E.E.O.C. Nov. 30, 2006)) ("EEOC SJ"), ECF No. 30-3. Specifically, the plaintiff only brought charges of racial and disability discrimination regarding her 2004 bonus.  *See id.* at 1 ("The issue . . . is whether, on November 12, 2004, Complainant [plaintiff] was discriminated against on the bases of race (African American), color (Black), and physical handicap (Back) as a result of disparate treatment by a Management Official in his decision on *Performance Awards*.") (emphasis added).

On November 30, 2006, the administrative judge ("AJ") found that the plaintiff had not proffered evidence from which he could conclude that the agency discriminated against her on the basis of race or disability, and noted that "the record does not support an inference" of discrimination on the basis of disability with respect to the 2004 bonus, EEOC SJ at 6, and that the plaintiff had not shown that the bonus was a "pretext for unlawful discrimination" on the basis of race, *id.* at 8.  Accordingly, the AJ entered summary judgment in favor of the defendant. *See generally id.*

On January 10, 2007, the Department of Interior ("DOI") issued a Final Agency Decision adopting the EEOC's November 30, 2006 decision.  *See* Pl.'s Opp'n, Ex. 1 (*Hester v. Kempthorne*, No. 100-2006-00135X (E.E.O.C. Jan. 10, 2007)) ("Final Agency Decision"), ECF No. 30-1.  The Final Order advised the plaintiff that "an appeal of the agency's final order to the EEOC must be filed by a Complainant within thirty . . . days of receipt of an agency's or Administrative Judge's decision."  *Id.* at 2.

On February 15, 2007, thirty-six days after the DOI adopted the EEOC decision, the

plaintiff filed an administrative appeal with the EEOC Office of Federal Operations ("OFO").

*See* Pl.'s Opp'n, Ex. 2 (*Hester v. Salazar*, No. 0120071664, 2009 WL 591023, at *1 (E.E.O.C.

Feb. 27, 2009)) ("OFO Dismissal of Appeal"), ECF No. 30-2.  This appeal was denied two years

later, on February 27, 2009, because the appeal was not timely filed within the 30-day window

for appeals following the Final Agency Decision of January 10, 2007.  *Id*.  The OFO found no

basis for waiver or equitable tolling of the thirty-day time limit on appeals.  *Id*.

### 2.  MSPB Proceedings

Concurrently with the EEOC proceedings, the plaintiff initiated a second set of

proceedings before the MSPB in March 2006, shortly after her removal from her job.

Specifically, she filed a petition alleging retaliation and improper removal from federal service as

well as discrimination under the Rehabilitation Act, 29 U.S.C. § 792 (2006).  *See* Pl.'s Opp'n to

Part. Dismissal at 3; *see also* MSPB Denial.  Her petition in that matter was denied on July 24,

2006.  *See id.*  The MSPB AJ concluded that "the record . . . shows that the agency was within its

rights in [removing the plaintiff from her job], even though she was receiving OWCP benefits

during her absence.  It is well settled that prolonged absence with no foreseeable end constitutes

just cause for removal."  *Id*. at *7 (citations omitted).  Although she filed a petition for review,

the full MSPB affirmed the decision below.  *See* Def.'s Mem., Ex. 6 (*Hester v. Dep't of the

Interior*, 104 M.S.P.R. 265 (M.S.P.B. 2006)), ECF No. 18-6.  The plaintiff then appealed to the

EEOC, which affirmed the ruling on January 31, 2007.  *See* Appeal of MSPB Final Decision at

*1.  The EEOC informed the plaintiff at the time that "there is no further right of administrative

appeal from the Commission's decision" but that she could file a civil action "within 30 days

from the date of receiving the decision." *Id*. at *2. The plaintiff did not file a civil action and the plaintiff's removal from employment is not at issue in this case.

### 3.      District Court Proceedings

Following the OFO denial in the first set of proceedings, the plaintiff filed a *pro se* lawsuit, "based on the denial of her appeal before the EEOC" in the first set of administrative proceedings discussed *supra*. Pl.'s Opp'n to Part. Dismissal at 4. The plaintiff alleged in a three-count Complaint (1) disparate treatment with respect to compensation (manifested in the defendant's awarding the plaintiff, in 2004, a bonus of $1000 less than she anticipated) on account of race (Count I), (2) denial of a request for reasonable accommodation (Count II), and (3) retaliation with respect to termination (Count III). *See* Complaint ("Compl."), ECF No. 1, ¶¶ 46-51. The defendant then moved to dismiss Counts II and III of the Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for lack of jurisdiction and failure to state a claim for which relief can be granted. *See* ECF No. 5.

After obtaining counsel, the plaintiff filed an opposition to the defendant's motion for partial dismissal of the complaint and sought leave to amend her Complaint. ECF Nos. 7, 8. On September 30, 2010, the Court[10] denied the defendant's motion for partial dismissal and granted the plaintiff's motion to file an amended complaint, which was docketed the same day. *See* Memorandum Opinion ("Mem. Op."), ECF No. 11, and Order (Walton, J.), ECF No. 12; Am. Compl., ECF No. 14.

As noted, the plaintiff alleges in her Amended Complaint that, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 *et seq*., the CFA discriminated against the plaintiff, *inter*

---

[10] The case was originally assigned to Judge Walton, but was later randomly assigned to the under-signed Judge on January 20, 2011.

*alia*, based on her race and disability, by awarding her a performance-based bonus of $4000 in 2004, as well as by placing her on AWOL status and denying her request to work from home on a part-time basis. *See generally* Am. Compl.[11]

The defendant subsequently filed a new motion to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the plaintiff (1) failed to name the appropriate defendant, because she should have named the Secretary of the CFA as the defendant, and (2) failed to exhaust her administrative remedies in a timely manner with respect to each of her claims. *See* Def.'s Mem. at 1.

Pursuant to the Court's December 8, 2010 Minute Order, the plaintiff's memorandum in opposition to the Motion to Dismiss the Amended Complaint was due by January 14, 2011, on which date the Court granted a consent motion, filed by the plaintiff through her counsel, to extend the time for her response until February 14, 2011. *See* Pl.'s Consent Mot. for Extension of Time, ECF No. 19. No response to the defendant's Motion to Dismiss was filed on the plaintiff's behalf by February 14, 2011, and no request for an additional extension of time was made to the Court.

On April 13, 2011, two months after the plaintiff's opposition was due, this Court granted the defendant's Motion to Dismiss as conceded, pursuant to Local Civil Rule 7(b), which states,

---

[11] The plaintiff amended her original Complaint to restrict the allegations in Counts II and III to the charges brought in the EEOC proceedings. *See generally* EEOC SJ (plaintiff alleged racial and disability discrimination manifest in a $1000 difference between the performance bonus she wanted in 2004 and what she actually received). The Amended Complaint no longer contains allegations that only appeared in the independent MSPB proceedings. *See* Pl.'s Opp'n to Part. Dismissal at 3 (in the MSPB proceedings, the plaintiff alleged retaliation regarding her termination from the CFA). In Count II of her original complaint, the plaintiff alleged that the defendant discriminated against her on account of disability by denying her request for "reasonable accommodation" (her request to work from home on a part-time basis). Compl. ¶ 49; *see also id.* ¶¶ 42, 44. In Count II of the Amended Complaint, the plaintiff alleges disparate treatment with respect to *compensation* (referring namely to the plaintiff's receiving $1000 less than anticipated for her 2004 bonus) on account of her disability. *See* Am. Compl. ¶¶ 55-56. Furthermore, in Count III of her original complaint the plaintiff alleged retaliation for her OWCP claims that led to her discharge from the CFA. Compl. ¶¶ 50-51. By contrast, in Count III of her Amended Complaint the plaintiff alleges only disability *discrimination*, not retaliation, and only with respect to the terms and conditions of her employment (namely, the defendant denying her request to work from home on a part-time basis and placing her on AWOL status), not her termination. *See* Am. Compl. ¶¶ 57-58.

in pertinent part, that when an opposing party does not "file a memorandum of points and authorities in opposition to the motion . . . within the prescribed time, the Court may treat the motion as conceded."  ECF No. 20.

Three months later, the plaintiff filed a motion for reconsideration of the April 13, 2011 Order.  *See* ECF No. 21.[12]  On October 18, 2011, the Court granted the plaintiff's motion.  ECF No. 25.  Pending before the Court is the defendant's Motion to Dismiss the Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6).  ECF No. 18.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss for Lack of Subject-Matter Jurisdiction under 12(b)(1)

On a motion to dismiss for lack of subject matter jurisdiction, under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  FED. R. CIV. P. 12(b)(1); *Mostofi v. Napolitano*, 841 F. Supp. 2d 208, 210 (D.D.C. 2012) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)); *Kim v. United States*, 840 F. Supp. 2d 180, 184 (D.D.C. 2012); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  As the Supreme Court has explained "many times," the "district courts of the United States . . . are 'courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute.'"  *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005)

---

[12] Despite the fact that the plaintiff was represented by counsel, she filed a *pro se* Motion for Reconsideration, in which she alleged that she first learned of the defendant's Motion to Dismiss at the same time that she learned it had been granted due to her counsel's failure to respond.  ECF No. 21 ¶¶ 3, 5-6.  The plaintiff also alleged that the person she thought was her counsel had entered into a filing arrangement with local counsel (Ernest Francis) without plaintiff's knowledge or consent, and that he therefore "violated the District of Columbia Court Rules."  *Id.* ¶¶ 3-4.  On August 16, 2011, Ernest Francis subsequently filed a Supplemental Memorandum to the plaintiff's Motion for Reconsideration in which he took no position on the plaintiff's pending motion but explained that he had not engaged in any unethical behavior.  *See* ECF No. 23 at 1.  This Court, as noted, then granted the plaintiff's Motion for Reconsideration on October 18, 2011, because, under Rule 60(b), judgment "on the merits is preferable to a judgment by default," and the Court determined that the defendant would not suffer prejudice.  Mem. Op., ECF No. 24, at 9-10.

(quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)); *see also Micei Int'l v. DOC*, 613 F.3d 1147, 1151 (D.C. Cir. 2010) ("[T]wo things are necessary to create jurisdiction in an Article III tribunal other than the Supreme Court . . . The Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it.") (internal citations and quotation marks omitted).  For this reason, a "federal district court's initial obligation is to ascertain its subject matter jurisdiction." *Malyutin v. Rice*, 677 F. Supp. 2d 43, 45 (D.D.C. 2009), *aff'd*, No. 10-cv-5015, 2010 U.S. App. LEXIS 13869 (D.C. Cir. July 6, 2010).  When a court lacks subject matter jurisdiction, it must dismiss the case.  *See Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 48 (D.D.C. 2011); *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 62 (D.D.C. 2007).

The Court must be assured that it is acting within the scope of its jurisdictional authority and therefore must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *See Macharia v. United States*, 334 F.3d 61, 64, 67-68 (D.C. Cir. 2003); *Westberg v. FDIC*, 759 F. Supp. 2d 38, 41 n.1 (D.D.C. 2011); *Dubois v. Wash. Mut. Bank*, No. 09-cv-2176, 2010 U.S. Dist. LEXIS 91855, at *5 (D.D.C. Sept. 3, 2010); *Hoffman v. District of Columbia*, 643 F. Supp. 2d 132, 135 (D.D.C. 2009); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001).  In evaluating subject-matter jurisdiction, the Court, when necessary, may look beyond the complaint to "undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Alliance for Democracy v. FEC*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005).

**B.    Motion to Dismiss for Failure to State a Claim under 12(b)(6)**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* FED. R. CIV. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Instead, the complaint must plead facts that are more than "'merely consistent with' a defendant's liability," *id*. at 678 (quoting *Twombly*, 550 U.S. at 557); "the plaintiff [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id*. (internal citation omitted); *accord Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). The Court "must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (citations and internal quotation marks omitted).

**III.    DISCUSSION**

As noted, the plaintiff raises three claims. She contends that her former employer, the CFA, discriminated against her on account of race (Count I) as well as on account of disability (Count II) under Title VII by denying her $1000 that she was anticipating would be part of her 2004 performance award. *See* Am. Compl. ¶¶ 35-36, 53-56. The plaintiff also contends that the CFA discriminated against her on account of disability (Count III) under the Rehabilitation Act of 1973 by, *inter alia*, placing her on AWOL status and denying her request to work from home on a part-time basis following the re-aggravation of her back injury. *See id.* ¶¶ 57-58.

14

The defendant argues that the plaintiff's claims should be dismissed for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6).  The Court agrees.  As a threshold issue, the Court lacks jurisdiction over the plaintiff's claims because the plaintiff failed to name the proper defendant, and, therefore, her Amended Complaint must be dismissed pursuant to Rule 12(b)(1).  Furthermore, allowing the plaintiff leave to amend the complaint to name the correct defendant would be futile in this case: even if the plaintiff were to name the correct defendant, her case would have to be dismissed under Rule 12(b)(6) because she did not comply with the thirty-day administrative appeal deadline in the EEOC process, and thus failed to exhaust her administrative remedies with respect to all three claims.  Therefore, all of the plaintiff's claims asserted in the Amended Complaint are untimely.  Moreover, the Court concludes that even if it were to reach the merits of the plaintiff's claims, the plaintiff has not stated a claim for which relief can be granted.  The Court will address each of these issues seriatim below.

### A. The Plaintiff's Amended Complaint Must Be Dismissed for Failure to Name the Proper Defendant.

Although the plaintiff's claims "aris[e] exclusively" from her employment at the CFA, Def.'s Mem. at 10-11, she filed this action against the Secretary of the DOI, Kenneth Lee Salazar, instead of against the Secretary of the CFA, Thomas Luebke.  *See* Am. Compl. ¶ 5; *see also* Def.'s Mem. at 10-12.  The defendant argues that the plaintiff's Amended Complaint thereby fails to name the proper defendant and therefore should be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1).  *See id.* at 10.  The Court agrees for two related reasons: (1) under 42 U.S.C. § 2000e-16(c), the plaintiff may only sue the head of the agency whose actions gave rise to her claims (the CFA); and because (2) the CFA is an independent agency and not part of the DOI.

### 1.     The Secretary of the CFA is the Proper Defendant.

The Secretary of the CFA, Thomas Luebke, is the proper defendant in this case because only the head of the agency from which the plaintiff's claims arise is subject to suit under 42 U.S.C. § 2000e-16(c).

The Equal Employment Opportunity Act of 1972, codified at 42 U.S.C. § 2000e *et seq.*, amended Title VII of the Civil Rights Act of 1964 and granted federal employees the right to file a "'civil action' after final agency action." *See Hackley v. Roudebush*, 520 F.2d 108, 111-12 (D.C. Cir. 1975). This is not a general grant to sue, but, rather, is a right to file suit only against the "head of the department, agency, or unit" that caused the alleged injury. 42 U.S.C. § 2000e-16(c); *Hackley*, 520 F.2d at 115 n.17 (noting that "[t]he only proper defendant in a Title VII suit . . . is the head of the department, agency, or unit in which the allegedly discriminatory acts transpired") (internal quotation marks and citations omitted); *Jordan v. Quander*, No. 11-1486, 2012 U.S. Dist. LEXIS 111474, at *9-10 (D.D.C. Aug. 9, 2012) (granting motions to dismiss where plaintiff did not name "proper defendant" in Title VII claim); *see also Marshall v. Potter*, 634 F. Supp. 2d 66, 68 (D.D.C. 2009) (noting that the "proper defendant" for claims under the Rehabilitation Act, like those under Title VII, must be the "head of the department, agency, or unit") (citing 42 U.S.C. § 2000e-16(c); *Paegle v. Dep't of Interior*, 813 F. Supp. 61, 64 n.2 (D.D.C. 1993)).

In this case, all of the plaintiff's claims arise exclusively from her employment at the CFA. *See* Am. Compl. ¶ 4. The Secretary and the Chairman of the CFA determined the plaintiff's performance award in 2004, which gave rise to Counts I and II. *See id.* ¶¶ 20-21. As to Count III, the CFA denied her requests to work from home on a part-time basis, *see id.* ¶¶ 44, 51; and it was the Secretary of the CFA who allegedly placed her on AWOL status, refused to

approve her OWCP forms, and provided inaccurate forms to OWCP, *see id.* ¶¶ 47-49.  Given these allegations, the plaintiff has a right to file suit only against the head of the CFA, whose actions gave rise to her discrimination claims.

### 2.      The CFA is an Independent Agency, Not a Component of DOI.

The CFA is an independent agency, not a component of DOI.  *See Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 130 S. Ct. 3138, 3215 (2010) (designating the CFA as an independent agency).  Thus, the Secretary of the CFA is the only party amenable to suit under Title VII and the Rehabilitation Act.  *See id.*; *accord* Pl.'s Opp'n at 7 ("Norris is an employee of the federal government through one of its many *agencies*.") (emphasis added).

The CFA maintains its own operations, independent management, centralized control of its staff, and separate ownership.  *See* Am. Compl. ¶¶ 8, 9, 20, 21.  For these reasons, the plaintiff's attempt to characterize the CFA and the DOI as a single "unit" defendant under 42 U.S.C. § 2000e-16(c) is without merit.

The plaintiff also argues, unavailingly, that the "difficulty in this case is that throughout the entire administrative process the Department of Interior, not the [CFA], was the named respondent."  *See* Pl.'s Opp'n at 6.  Moreover, the plaintiff argues that "the DOI, not the [CFA], issued the Final Agency Decision which is the subject of this action."  *Id.*  Furthermore, the plaintiff points out that there is a Memorandum of Understanding between the CFA and the DOI that the DOI "would provide, *inter alia*, employee relations advice to and legal services for the [CFA]."  *Id.*  These points are not persuasive.  The Equal Employment Opportunity Act grants federal employees the right to file suit in federal court, but only against the *proper* defendant. *See* 42 U.S.C. § 2000e *et seq.*  Therefore, the plaintiff must name the Secretary of the CFA as the defendant for jurisdiction in this Court.  *See, e.g.*, *Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088,

1091 (D.C. Cir. 1985) (noting that "the head of the agency is the only proper defendant in a Title

VII action"); *Nichols v. Truscott*, 424 F. Supp. 2d 124, 132 n.8 (D.D.C. 2006) (same); *Mason v.*

*African Dev. Found.*, 355 F. Supp. 2d 85, 89 (D.D.C. 2004) (same); *Nurriddin v. Bolden*, 674 F.

Supp. 2d 64, 81 (D.D.C. 2009) ("Since the Rehabilitation Act draws from the procedures of Title

VII, the only proper defendant is the head of the department, agency, or unit.").

Accordingly, the Court must dismiss the plaintiff's Amended Complaint under Rule

12(b)(1) because she failed to name the proper defendant in this action.

### B.    Leave to Amend Would Be Futile in this Case Because of the Plaintiff's Failure to Timely Exhaust Administrative Remedies.

Under Federal Rule of Civil Procedure 15(a), "[t]he court should freely give leave [to

amend a pleading] when justice so requires." FED. R. CIV. P. 15(a).  "Whether to grant a motion

to amend is within the sound discretion of the district court."  *Gerlich v. United States DOJ*, 828

F. Supp. 2d 284, 290-91 (D.D.C. 2011).  Here, the plaintiff requests that, "[i]f the Court agrees

with the Defendant, . . . she be permitted to substitute the Secretary of the [CFA] . . . as the

Defendant in this case."  Pl.'s Opp'n at 6.  The defendant argues, however, that this relief would

be futile in this case because the Amended Complaint must nevertheless be dismissed for failure

to exhaust administrative remedies.  *See* Def.'s Mem. at 14; *see also Nat'l Wrestling Coaches*

*Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004) ("[A] district court has discretion to

deny a motion to amend on grounds of futility where the proposed pleading would not survive a

motion to dismiss.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In

the absence of any apparent or declared reason – such as . . . *futility of amendment* . . . – the leave

[to amend under Federal Rule of Civil Procedure 15(a)] sought should, as the rules require, be

'freely given.'") (emphasis added).  The Court agrees.  Even if the plaintiff were to name the

proper defendant, all of the plaintiff's claims must nevertheless be dismissed under Rule 12(b)(6)

for failure to exhaust administrative remedies because (i) the plaintiff did not timely file her

appeal to the EEOC OFO and because (ii) she cannot establish the extraordinary circumstances

necessary to warrant equitable tolling.[13]   The Court will address each of these issues below.[14]

---

[13] Courts must dismiss Title VII actions for not timely exhausting administrative remedies under Federal Rule of Civil Procedure 12(b)(6), rather than for lack of jurisdiction under Rule 12(b)(1). *See Blue v. Jackson*, No. 10-cv-762, 2012 U.S. Dist. LEXIS 70063, at *9 (D.D.C. May 21, 2012) ("Federal employees may file a Title VII action in federal court only after exhausting their administrative remedies. Title VII's exhaustion requirements, however, are not jurisdictional.") (citations omitted); *Rosier v. Holder*, No. 10-cv-525, 2011 U.S. Dist. LEXIS 67527, at *7 (D.D.C. June 24, 2011) ("Title VII exhaustion requirements are not jurisdictional, but rather function like a statute of limitations. Therefore, a Rule 12(b)(6) motion to dismiss for 'failure to state a claim upon which relief can be granted' is the appropriate vehicle to challenge an alleged failure to exhaust.") (citations omitted); *Hamilton v. Geithner*, 743 F. Supp. 2d 1, 7 (D.D.C. 2010) (noting that a "plaintiff's failure to exhaust his administrative remedies under Title VII does not implicate a court's subject-matter jurisdiction and, thus, dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) would be inappropriate"); *see also Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011) (noting that "Title VII's exhaustion requirements are not jurisdictional.") (citations omitted); *Williams v. Spencer*, No. 08-0847, 2012 U.S. Dist. LEXIS 113110, at *7-8 (D.D.C. Aug. 13, 2012) (same); *Youssef v. Holder*, No. 11-01362, 2012 U.S. Dist. LEXIS 109855, at *16-17 (D.D.C. Aug. 7, 2012) (same).   Courts also dismiss Rehabilitation Act claims for untimely filing under Federal Rule of Civil Procedure 12(b)(6) instead of Rule 12(b)(1) once there has been a final disposition of the administrative complaint. *See Koch v. Schapiro*, 777 F. Supp. 2d 86, 90, 92 n.4 (D.D.C. 2011) (noting that a Rehabilitation Act claim is properly considered under Rule 12(b)(6) where "there was a final disposition of [the plaintiff's administrative] complaint – albeit by way of dismissal and not on the merits"); *see also Perry v. U.S. Dept. of State*, 669 F. Supp. 2d 60, 65 (D.D.C. 2009) ("The Rehabilitation Act requires nothing more [than final disposition of an administrative complaint before filing a lawsuit].") (citing *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006) ("[J]urisdiction under the Rehabilitation Act depends on the final disposition of an administrative complaint") (internal brackets and quotation marks and citations omitted)).   Because the plaintiff's EEO complaint included her disability discrimination claim, and the EEOC OFO made a final disposition of this EEO complaint based on its untimely appeal, *see* OFO Dismissal of Appeal, the Court has jurisdiction over the plaintiff's Rehabilitation Act claim. *See Fortune v. Holder*, 767 F. Supp. 2d 116, 120 n.5 (D.D.C. 2011) (finding, with respect to the plaintiff's Rehabilitation Act claim, that "[t]he Plaintiff brings this action after having received the [agency's] final determination of his discrimination complaint, and therefore he has exhausted his administrative remedies for purposes of establishing the Court's subject matter jurisdiction.") (citation omitted).   *But see Rosier*, 2011 U.S. Dist. LEXIS 67527, at *8 (noting that, "[i]n contrast to Title VII claims, the law of this Circuit is that 'administrative exhaustion under the Rehabilitation Act is a jurisdictional requirement . . . .' Thus, the proper method for challenging exhaustion under the Rehabilitation Act is a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.") (citations omitted).

[14] The defendant also suggests that leave to amend may be futile on another ground.   Specifically, the defendant argues that compensatory damages are unavailable for the plaintiff's claims against the CFA because "Congress has not authorized recovery of compensatory damages under Title VII or the Rehabilitation Act against an agency, such as the CFA, which has less than 14 employees."   *See* Def.'s Mem. at 13.   The defendant points to 42 U.S.C. § 1981a(b)(3), which provides dollar amount limitations on recovering compensatory damages from agencies that have, for twenty or more calendar weeks in the current or preceding year, "more than 14 and fewer than 101 employees," "more than 100 and fewer than 201 employees," "more than 200 and fewer than 501 employees," and more than "500 employees."   *Id*. at 12-13 (quoting 42 U.S.C. § 1981a(b)(3)).   The defendant argues that, since Congress has made no provision for compensatory damages for agencies with fewer than fourteen employees, that the plaintiff may not recover compensatory damages here because the CFA has fewer than fourteen employees.   *Id.* The Court notes that, indeed, the CFA has fewer than fourteen paid employees (eleven, to be exact).   *See* Def.'s Mem. at 3.   The CFA also includes, however, seven Commission members independent of its eleven salaried employees.   *See* Am. Compl. ¶ 9.   If the seven Commission members were included along with the salaried employees in the calculation of agency employees, then the CFA would meet the threshold for compensatory

### 1.      Claims at Issue

As a threshold matter, the Court must determine which of the plaintiff's claims are currently at issue.  "A Title VII lawsuit following the EEOC charge is limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations."  *See Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (citation and internal quotation marks omitted).  While both parties agree that only claims raised in the EEOC proceedings, and not the MSPB proceedings, are relevant, [15] *see* Pl.'s Opp'n at 10; Def.'s Mem. at 20-21, they dispute which of the plaintiff's claims in the Amended Complaint arise from her charges before the EEOC.  Both parties are in general agreement as to Counts I and II, namely that the plaintiff's claims of racial and disability discrimination regarding her 2004 performance bonus arise from the EEOC proceedings.  *See* Def.'s Mem. at 16; Pl.'s Opp'n to Part. Dismissal at 2, 4.  The plaintiff contends that her disability discrimination claims in Count III (regarding her placement on AWOL status and the denial of her request to work from home on a part-time basis) arise from her disability discrimination claim raised in the EEOC proceedings (which focused on her claim regarding her 2004 bonus).  *See* Pl.'s Opp'n at 10.  The defendant, however, contends that these disability discrimination claims in Count III are not sufficiently related, and thus were not raised in, nor administratively exhausted through, the EEOC proceedings.  *See* Def.'s Mem. at 21-22.  The Court agrees with the plaintiff here that all three counts arise from claims made previously in the EEOC proceedings.

---

damages under 42 U.S.C. § 1981a(b)(3).  The Court need not decide this question, however, since it decides the Motion to Dismiss on other grounds.

[15] Specifically, the parties agree that the plaintiff's allegations regarding retaliation and termination are not currently at issue.  *See* Def.'s Mem. at 20-21; Pl.'s Opp'n at 10.  These claims were only raised in the independent MSPB proceedings, *see* Appeal of MSPB Final Decision; were not timely exhausted, *see* Def.'s Mem. at 20-22; and are not currently at issue before this Court.  For this reason, the plaintiff amended her original complaint to drop claims that were only raised in the MSPB proceedings and tailored her Amended Complaint to address claims raised in the EEOC proceedings.  *See* note 11, *supra*.

First, the Court construes the plaintiff's discrimination claims in Counts I and II of the Amended Complaint regarding loss of "compensation" as related only to her 2004 bonus, which was the subject of the EEOC proceedings. *See* EEOC SJ at 1 ("The issue . . . is whether, on *November 12, 2004*, Complainant [plaintiff] was discriminated against on the bases of race (African American), color (Black), and physical handicap (Back) as a result of disparate treatment by a Management Official in his decision on *Performance Awards*.") (emphasis added); Def.'s Mem. at 16; Pl.'s Opp'n to Part. Dismissal at 2 ("In February 2005 Ms. Hester filed a complaint with the Equal Employment Opportunity Commission regarding the reduction in her bonus award alleging race and disability discrimination.").[16]

Regarding Count III, the defendant argues that the plaintiff's claims of disability discrimination regarding her placement on AWOL status and denial of her request to work from home on a part-time basis were not raised before the EEOC. *See* Def.'s Mem. at 22.  The plaintiff did cite her alleged disability in the EEOC proceedings, however, although the EEOC proceedings focused only on the alleged disability discrimination in connection with the CFA's decisions on the 2004 performance award.  When courts construe complaints to the EEOC, they do so liberally "since very commonly [the complaints] are framed by persons unschooled in technical pleading." *Shehadeh v. Chesapeake & Potomac Tel. Co.*, 595 F.2d 711, 727 (D.C. Cir. 1978) (citations omitted); *Martinez v. P.R. Fed. Affairs Admin.*, 813 F. Supp. 2d 84, 93 (D.D.C. 2011).  For purposes of this opinion, the Court assumes that the plaintiff's disability discrimination claims made in the EEOC proceedings encompass her disability-related claims in Count III.  The Court therefore finds that the three counts raised in the plaintiff's Amended Complaint (racial and disability discrimination as to her 2004 bonus, and disability

---

[16] To the extent that the plaintiff is attempting to assert "compensation" claims in Counts I and II that are unrelated to the 2004 bonus, those claims are dismissed.

discrimination as to AWOL status and denial of part-time work from home) were all

encompassed in the claims made in the EEOC proceedings below, and the Court will thus

address the timeliness of these claims together.

### 2.     Failure to Timely Exhaust

All of the plaintiff's claims arising from the EEOC proceedings must be dismissed for

failure to exhaust administrative remedies in a timely manner.  *See* Def.'s Mem. at 14-18.  Under

Title VII, a plaintiff must exhaust all administrative remedies.  *See, e.g.*, *Peters*, 2012 U.S. Dist.

LEXIS 52606, at *40 (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 555 n.4 (1977);

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973); *Washington v. Wash. Metro.*

*Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998) ("Before suing under . . . Title VII, an

aggrieved party must exhaust his administrative remedies."); *McKeithan v. Boarman*, 803 F.

Supp. 2d 63, n.3 (D.D.C. 2011) (same)); *see also* 42 U.S.C. § 2000e-5(f)(1).  Exhaustion requires

strict adherence to filing deadlines: a plaintiff who "fails to comply, to the letter, with

administrative deadlines ordinarily will be denied a judicial audience."  *Brown v. Marsh*, 777

F.2d 8, 13 (D.C. Cir. 1985) (citation and internal quotation marks omitted); *see also Miller v.*

*Rosenker*, 578 F. Supp. 2d 67, 70-71 (D.D.C. 2008) (noting that the complaint of a plaintiff who

fails to comply with deadlines under 29 C.F.R. § 1614.407 is time-barred and subject to

dismissal).

Here, the plaintiff failed to appeal the agency's final order to the EEOC OFO within the

thirty-day appeals window and thus failed to exhaust all of her administrative remedies.  *See*

OFO Dismissal of Appeal at *1.  As noted, after receipt of the initial EEOC "November 30, 2006

summary judgment decision upon which this appeal is based," the plaintiff decided to appeal to

the EEOC OFO.  Pl.'s Opp'n at 10.  The plaintiff, however, failed to appeal within the thirty-day

appeals window allowed by EEOC regulation 29 C.F.R. § 1614.402 and instead filed four days late.  *See* Pl.'s Opp'n at 7; *see also McAlister v. Potter*, 733 F. Supp. 2d 134, 142 (D.D.C. 2010) (noting that "[c]ourts apply the ninety-day time limit strictly and will dismiss a suit for missing the deadline by even one day.") (collecting cases).  Thus, by filing her appeal four days late, the plaintiff failed to exhaust all of the relevant claims in Counts I, II, and III of the Amended Complaint.

The plaintiff's argument to the contrary is unavailing.  The plaintiff contends that she timely filed this lawsuit according to the notice accompanying the OFO denial of her untimely appeal.  *See* Pl.'s Opp'n at 7-9.  Timely filing of a civil action after OFO dismissal, however, does not excuse the prior untimely filing of her appeal within the administrative process.  *See Miller*, 578 F. Supp. 2d at 70 (noting that "for the Plaintiff to have timely filed his claim in federal court, his administrative appeal with the EEOC must have been timely filed"); *Gantt v. Mabus*, No. 11-cv-1392, 2012 U.S. Dist. LEXIS 59678, at *8 (D.D.C. Apr. 30, 2012) (same). [17]

Accordingly, the plaintiff's failure to timely appeal constitutes a failure to exhaust all administrative remedies and thus is a sufficient ground for dismissal.

### 3.    No Basis for Equitable Tolling, nor for a Period of Discovery on Equitable Tolling.

If claims are untimely filed, a plaintiff may plead sufficient justifications for equitable tolling in the district court to avoid dismissal.  *See Saltz v. Lehman*, 672 F.2d 207, 209 (D.C. Cir. 1982) (noting that the plaintiff bears the "burden of pleading and proving in the district court any

---

[17] The plaintiff also contends that filing for reconsideration of an agency decision tolls the 90-day limit for action in federal court.  *See* Pl.'s Opp'n at 7-9.  This statement is true but her argument is misplaced.  First, the plaintiff did not file a request for reconsideration of the EEOC decision but instead chose to file an appeal to the EEOC OFO.  Second, even in the context of reconsideration, tolling only applies when a plaintiff *timely* files her request.  *See Williams v. Chu*, 641 F. Supp. 2d 31, 40 (D.D.C. 2009) ("Where a *timely* request for reconsideration is made, 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407 require only that the complainant file his complaint in this Court within ninety days of the denial of the request.") (emphasis added); *Nordell v. Heckler*, 749 F.2d 47, 48 (D.C. Cir. 1984).  The plaintiff in this case did not file a timely appeal but instead filed her administrative appeal four days late.

equitable reasons for [her] failure to meet the thirty-day requirement" in a Title VII case).

"Federal courts have typically extended equitable relief only sparingly." *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 96 (1990).  Indeed, courts only toll late filings "in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army,* 845 F.2d 1051, 1057 (D.C. Cir. 1988).   A plaintiff seeking equitable tolling must have exercised due diligence and presented more than a "garden variety claim of excusable neglect." *Battle v. Rubin,* 121 F. Supp. 2d 4, 8 (D.D.C. 2000) (quoting *Irwin*, 498 U.S. at 96).

In this case, as explained *supra*, the plaintiff has not established, nor is there anything in the record to suggest, that there are any "extraordinary circumstances" that would warrant equitable tolling of the thirty-day window for appealing the Final Agency Decision to the EEOC OFO.  The plaintiff merely argues that she is entitled to equitable tolling because of her "counsel's failure to follow the rules, regulations, and statutes," namely to file a timely appeal to the EEOC OFO within 30 days of the agency's final decision on January 12, 2007.   Pl.'s Opp'n at 10.  (Instead, as noted, her counsel filed the appeal on February 15, 2007, four days late.).

The plaintiff also contends that even if the Court were to decide that the case "is not timely for purposes of addressing the merits of this case at this time, it surely is timely with respect to the issue of equitable tolling." *Id*. at 9.  Accordingly, the plaintiff requests that she "be permitted to engage in a brief period of discovery on the equitable tolling issue." *Id*. at 10.

The Court, however, finds no reason to grant the plaintiff time for discovery in order to present the Court reasons to excuse her untimely appeal to the EEOC OFO.   The EEOC OFO, in dismissing the plaintiff's appeal as untimely, found that "the [plaintiff's] attorney's . . . contentions fail to invoke waiver or equitable tolling for filing the appeal."  OFO Dismissal of Appeal at *1.  Instead, the plaintiff's attorney acknowledged to the EEOC OFO that the Final

Agency Decision reached his office on January 12, 2007, but due to an afternoon delivery and a holiday he did not personally receive the decision until the following week. *Id*. At best, the plaintiff's prior counsel's reason presented to the EEOC for his untimely filing of the appeal is a "garden variety claim of excusable neglect" that does not justify equitable tolling. *See Rao v. Baker*, 898 F.2d 191, 192, 198 (D.C. Cir. 1990) (finding that plaintiff had not pled sufficient facts to "justify overturning EEOC's refusal to invoke its equitable discretion" where the plaintiff's counsel filed an untimely appeal while the plaintiff was out of the country). Although the plaintiff seems to suggest that "she is unable to obtain vital information bearing on the existence of her claim," Pl.'s Opp'n at 9, she has not suggested any reason for why she has been unable to obtain this unspecified information, nor suggested any explanation of how discovery on the issue of equitable tolling could possibly be fruitful. Her request is therefore denied.

Accordingly, because of the plaintiff's failure to administratively exhaust all three claims, and her inability to provide adequate justification for equitable tolling, her claims must be dismissed.

### C.   Plaintiff's Claims Also Fail on the Merits.

The Court now turns to the merits of the plaintiff's claims. Even if the plaintiff had not failed to administratively exhaust her claims, the Court finds that all three counts must be dismissed on the merits. Neither the plaintiff's claims regarding her 2004 performance bonus (Counts I and II) nor her claims regarding CFA actions prior to her removal (Count III) establish a *prima facie* case of discrimination under Title VII. Thus, all three counts must be dismissed for failure to state a claim under Rule 12(b)(6).

"[T]o establish a prima facie case for disparate treatment discrimination . . . the plaintiff must establish that (1) she is a member of a protected class; (2) she suffered an adverse

employment action; and (3) the unfavorable action gives rise to an inference of discrimination."
*Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001) (citation and internal quotation marks
omitted).  Furthermore, the "adverse employment action" must be "tangible," and must amount
to "a significant change in employment status, such as hiring, firing, failing to promote,
reassignment with significantly different responsibilities, or a decision causing a significant
change in benefits."  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *see also
Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003) (same); *Hutchinson v. Holder*, 668 F.
Supp. 2d 201, 214 (D.D.C. 2009) (same).

      None of the plaintiff's claims in her Amended Complaint sufficiently allege
discriminatory action under Title VII or the Rehabilitation Act.  First, her racial and disability
discrimination claims in Counts I and II fail to demonstrate an adverse action.  The plaintiff
receiving $1000 less than she hoped for as a performance bonus in no way constitutes an
"adverse employment action," especially when she also, around the same time, received a
promotion and a salary increase (of more than $18,500).  Furthermore, even if any adverse action
had occurred, her claims regarding the 2004 bonus fail to raise an inference of discrimination.
Second, the plaintiff's claims of disability discrimination in Count III (namely, her placement on
AWOL status and the denial of her request to work from home on a part-time basis) are entirely
conclusory, and thus fail to allege an adverse action or support an inference of discrimination.
The Court will first address Counts I and II together, and then turn to Count III.

      Turning to Counts I and II of the Amended Complaint, the plaintiff's discrimination
claims regarding her 2004 performance bonus fail to allege an adverse action.  In fact, while the
plaintiff describes a "*reduction* in her performance award," Am. Compl. ¶ 19 (emphasis added)
in 2004, her 2004 bonus was actually four times *greater* than the bonus she received merely four

years earlier, *see id.* ¶ 18.  Furthermore, in the same period in which the plaintiff was allegedly discriminated against with a lower bonus than she was hoping for, she received a promotion in title and a salary increase of over $18,500.  *See id.* ¶¶ 6, 26.  Although a "bonus is a tangible, quantifiable award, more analogous to one's salary or to a benefit of one's employment than to a performance evaluation . . . [and] the loss of a bonus that is worth hundreds of dollars is not a petty detriment," *Russell*, 257 F.3d at 819, "not everything that makes an employee unhappy is an actionable adverse action," *id.* at 818.  The plaintiff's disappointment in her 2004 bonus, which was in fact $4000 more than she would have earned based on her salary alone, may be real but this simply does not constitute an adverse action.  "Minor and even trivial employment actions that [an] employee did not like would otherwise form the basis of a discrimination suit," and the courts would be overrun with unhappy employees.  *Id.*  The Court declines to expand the definition of "adverse action" so broadly to encompass bonus pay-outs that are not as large as hoped for by the employee, particularly when, as here, the circumstances do not make plausible a claim of discrimination.

Furthermore, even if the 2004 bonus could possibly be construed as an adverse action, the plaintiff's claims regarding her performance bonus, even viewed in the light most favorable to the plaintiff, in no way support an inference of discrimination.  The plaintiff expected a higher performance bonus based only upon a single assurance made by the Secretary, *see* Am. Compl. ¶ 35, while it was actually the Chairman who decided the amounts of the performance bonuses for CFA staff, *see id.* ¶¶ 21, 30.  There is no suggestion in the Amended Complaint that there was any reason for the Chairman's decision other than his perception of the plaintiff's performance.  *See id.* ¶ 39 (noting that the Chairman had stated that "Cenny is not performing at the same level as everyone else on staff" and that he thought the plaintiff was "dropping the ball").

Furthermore, the fact that other employees were awarded larger bonuses than the plaintiff in 2004 does not give rise to an inference of discrimination.  No other employee occupied the same job position as the plaintiff, *see id.* ¶ 8, and the employees all received bonuses of different amounts, *see id.* ¶ 41; *see also* note 7, *supra*.[18]  The plaintiff notes that her "award had been decreased," while the Chairman "increased the award" of an architect, and that this was "shock[ing]" to the plaintiff.  *Id.* ¶ 36.  The Court does not find this as "shocking" given that the employees were in different roles (Administrative Officer and Architect) and that a substantive reason was offered for the Architect's higher bonus.  *See id.* ¶ 37 (noting that the Architect had assisted the Chairman in his search for a new Secretary for the CFA).  The plaintiff has not shown that similarly-situated colleagues received more of an increase in their bonuses, nor that she was in any way singled out relative to her co-workers.  Accordingly, the plaintiff has in no way established that she suffered an adverse employment action with respect to the 2004 bonus, nor that the employment action gives rise to an inference of discrimination.

The Court now turns to Count III, in which the plaintiff alleges that she experienced disparate treatment because the "[d]efendant altered and disrupted the terms and conditions of [her] employment at the [CFA] when it falsified documents, denied her leave, denied her the right to perform duties from her home and the right to contact OWCP and other federal compensation and benefit personnel."  *Id.* ¶ 58.

---

[18] Cases suggesting that lower bonuses than anticipated, or the loss of bonus, could possibly constitute adverse actions are distinguishable.  Those cases involve either (1) a failure to grant an award at all, or (2) instances where the award differed from awards granted to similarly-situated colleagues.  *See, e.g.*, *Hutchinson*, 668 F. Supp. 2d at 217 ("If Ms. Hutchinson can show that her poor performance reviews resulted in her . . . *failure* to receive awards and recognition, then she will have demonstrated that they were adverse employment actions.") (emphasis added); *Weber v. Battista*, 494 F.3d 179, 185-86 (D.C. Cir. 2007) ("[T]he record shows the Board had opted to give Weber an award in each of the three years preceding 1998, the year in which she complained of discrimination and received *no* such award. . . [thus, we] remand this aspect of the case . . . with respect to her *nonreceipt* of performance awards in 1998 and 1999.") (emphasis added); *Russell*, 257 F.3d at 818-19 ("[rejecting] the notion that a denial of a monetary bonus is not a cognizable employment action under Title VII" where plaintiff "received a lower bonus than her *similarly situated coworker*") (emphasis added).

Count III must be dismissed because the facts alleged are insufficient to state a Title VII discrimination claim under Rule 12(b)(6).  The Amended Complaint contains no plausible factual allegations to establish an adverse action or support an inference of discrimination with respect to the plaintiff's placement on AWOL status and the denial of her request to work from home on a part-time basis.  *See id.* ¶¶ 44-51.  At most, the plaintiff's claims are merely conclusory.  Furthermore, the plaintiff's other factual allegations – namely her multiple claims to OWCP that were approved with notice to her CFA supervisors, *see id.* ¶¶ 12, 16; her promotion following the initial approval for OWCP, *see id.* ¶ 14; *see also* note 8, *supra*; and the fact that she was absent from her job for nearly a year before she was dismsied, *see* MSPB Denial at *2 – do not plausibly support a claim of discrimination against the CFA.  Accordingly, the plaintiff's disability discrimination claim in Count III fails to state a claim under Rule 12(b)(6).

Therefore, all three claims, if not barred because of an improperly named defendant or failure to exhaust administrative remedies, would still have to be dismissed.

## IV.    CONCLUSION

For the reasons stated above, the defendant's motion to dismiss is GRANTED.  An appropriate Order shall accompany this Memorandum Opinion.

**DATED: August 17, 2012**

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge